IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FATIMA ANDREA GATES                                                       PLAINTIFF

V.                                     CIVIL ACTION NO.3:10-cv-489-CWR-FKB

MICHAEL J. ASTRUE, COMMISSIONER                       DEFENDANT
SOCIAL SECURITY ADMINISTRATION

___

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned United States Magistrate Judge for a report and recommendation regarding the appeal by Fatima Andrea Gates of the Commissioner of Social Security's final decision denying Gates's claim for disability insurance benefits and supplemental security income disability benefits. In rendering this recommendation regarding Gates's appeal, the court has carefully reviewed the administrative record regarding Gates's claims, including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ"); Plaintiff's motion for summary judgment (Docket No. 13) and accompanying brief; and Defendant's motion to affirm the decision of the commissioner (Docket No. 16) and accompanying memorandum. For the reasons discussed in this report and recommendation, the undersigned recommends that Plaintiff's motion for summary judgment be denied and that Defendant's motion to affirm the decision be granted.

I. FACTS

In June, 2007, Gates applied for Disability Insurance Benefits and Supplemental Security Income (SSI) disability benefits. Her claim was initially denied and was denied upon reconsideration. Gates requested an administrative hearing, which was held on September 22,

2009. Gates and her counsel appeared at the hearing. Gates testified, as did a vocational expert. (Docket No. 8-2, pp. 47-73, 91). On October 6, 2009, the ALJ found that Gates was not disabled since she had the residual functional capacity to perform a significant number of jobs. Gates's request for review was denied by the Appeals Council on July 10, 2010, and therefore the ALJ's decision became the final decision of the defendant. See 20 C.F.R.§ 404.981. On appeal, as addressed *infra*, Gates challenges only one aspect of the decision–the rejection of her treating physician's September 18, 2009, assessment of her residual functional capacity ("RFC") and the impact of that rejection on her claim. Accordingly, only the facts relevant to her contention on appeal will be addressed.

Gates was thirty-six (36) years old when she applied for benefits, and was thirty-eight (38) when the ALJ issued a decision. (Docket No. 8-2, p. 51). A high school graduate, Gates's past relevant work experience was as assembler, inventory clerk, inspector, greeting card decorator and sewer in a factory. (Id. at 67-68, 175). Gates claims to have been disabled since March 2005. (Docket No. 8-5, p. 2). She testified that she had not worked since October, 2004. (Docket No. 8-2, p.52). The parties agree that Gates "is impaired by obesity, osteoarthritis of the left knee and depression." (Docket No. 13-1, p.3; Docket No. 17, p. 2).

With respect to her physical condition, when she applied for benefits, Gates stated she was 63 inches tall and weighed 190 pounds. (Docket No. 8-6, p. 3). At the hearing, Gates testified she weighed approximately 250 pounds. (Docket No. 8-2, p. 52). An MRI of the lumbar spine obtained in October, 2007, showed that Gates had very mild facet joint hypertrophy and degenerative change at L5-S1, but no other abnormalities. (Docket No. 8-12, p. 30). The impression was mild facet joint arthropathy at L5-S1. (Id.). A neurological evaluation in

2

December, 2007, revealed full and equal upper and lower extremity strength at 5/5, with sensation intact. (Docket No. 8-12, p. 65). Though the physician observed no problem with her gait, he noted that Gates had some tenderness on palpation of the left knee, and recommended an orthopedic evaluation. (Id.). A February, 2008, x-ray of Gates's left knee was negative (Docket No. 8-12, p. 87), but clinic and physical therapy records reflect she was given exercises to perform at home and a sleeve to wear on her left knee. (Id. at p. 84).

## II. ADMINISTRATIVE DECISION

After considering the evidence of record in light of the five step process employed to determine whether an individual is disabled, the ALJ determined that Gates's physical impairments, while severe, did not reach the level required to render her disabled within the meaning of the applicable law. (Docket No. 8-2, p. 4). The ALJ also concluded that Gates's mental impairment did not render her disabled. (Id.). The ALJ determined that Gates had the residual functional capacity to perform light work that allows her to sit or stand alternately at will as long as she is not off task more than ten percent of her work period. Gates was also found to be restricted to only occasionally climbing ramps, or stairs and only occasionally balancing, stooping, crouching, working on her knees or crawling. Gates was never to climb ladders, ropes or scaffolds and was limited to work involving only simple, routine, repetitive tasks. (Id. at 5).

## III. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. §

405(g); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)). In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

## IV. DISCUSSION OF THE ALLEGED ERROR AND APPLICABLE LAW

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful

activity." Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir.2007) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987)). If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. Id. at 448 (citing Lovelace, 813 F.2d at 58). The burden of establishing disability rests with the claimant for the first four steps and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform. Bowen v. Yuckert, 482 U.S. 137, 163 n. 5 (1987).

On appeal, Gates maintains that the ALJ erred in rejecting the September 18, 2009, opinion of her treating physician, Dr. Doug Perry, that Gates cannot lift and carry ten pounds, and can sit, walk and stand less than two hours a day. Gates argues the ALJ erred in rejecting her treating physician's opinion without articulating good cause. For his part, the Commissioner maintains that the ALJ did not ignore evidence or misinterpret regulations or case law and that the ALJ adequately expressed the reasons for according Perry's opinion little probative weight. In sum, the Commissioner asserts that the law was followed and the ALJ's determination is supported by substantial evidence, such that the decision must be affirmed. The undersigned agrees with the Commissioner, and for the reasons which follow, recommends that the case be dismissed.

If the Commissioner's analysis proceeds to step four, as it did in the case *sub judice*, the ALJ must determine the claimant's "residual functional capacity" (RFC) which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). Pursuant to the relevant regulation, RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d). In making this determination, the ALJ decides whether an applicant retains physical and mental abilities

necessary to perform activities generally required by competitive, remunerative work. See Soc. Sec. R. 96-8p (1996). While assessment of RFC is reserved for the agency, the Fifth Circuit has clarified that the ALJ should consider a medical source opinion in arriving at his conclusions. Ripley v. Chater, 67 F.3d 552, 557 n. 23 (5th Cir.1995). A "medical source statement" describing types of work that an applicant is still capable of performing, "based on the medical source's findings," may come from a treating physician, a consultative physician or from non-examining "State agency medical and psychological consultants and other program physicians," who make determinations based on a review of plaintiff's medical records. 20 C.F.R § 404.1513.

When analyzing RFC, the ALJ in this case stated:

> As for the opinion evidence, a state agency physician opined on August 1, 2007, that the claimant was capable of performing work at the medium exertional level. (Exhibit 6F) The undersigned has considered and given little weight to this opinion as evidence received after this opinion was rendered reveals the claimant is more limited. On September 18, 2009, Doug Perry, M.D., completed a Medical Opinion Re: Ability To Do Work-Related Activities (Physical). He indicated that in an eight hour work day the claimant would be able to lift and carry less than 10 pounds, stand and or walk less than two hours, and sit less than two hours. She could only sit 15 minutes and stand 10 minutes before changing positions and would have to walk around every 15 minutes for five minutes. The claimant would also need to be able to lie down at unpredictable intervals. She could occasionally twist and climb stairs but never stoop, crouch, or climb ladders. She would have problems reaching overhead and pushing/pulling. She should also avoid all exposure to noise and even moderate exposure to fumes, odors, dust, gases, and poor ventilation and hazards. (Exhibit 16F) The undersigned has considered and given little weight to this opinion because the clinical findings and objective test results are insufficient to support his opinion. Furthermore, it is inconsistent

> with an opinion in his records found in Exhibit 10F, page 2, that the claimant "has no disabling condition" and depression "can be successful treated with medications." There is no medical evidence to explain the change in this opinion. Furthermore, there are no medical records from Dr. Perry since September 2007.

(Docket No. 8-2, p. 18).

In her brief Gates has thus framed the issue before the Court: "This case is about whether the ALJ failed to apply the proper legal standards to weigh the treating physician's opinion about the amount Ms. Gates can lift and carry, how frequently she can do so, and how long she can sit and stand and walk, and if so, whether Ms. Gates was prejudiced by that failure." (Docket No. 13-1, p. 5). The form Dr. Perry was asked to complete, and which is at issue, sought information as to residual functional capacity (RFC). (Docket No. 8-12, pp. 91-95). RFC assessments are within the purview of the ALJ. 20 C.F.R. §404.1546( c); 20 C.F.R. §416. 946 ( c). Dr. Perry's assessment, however, essentially indicates Gates is severely impaired. Accordingly, the "controlling weight" issue presented by Gates is as to Dr. Perry's opinion on the severity of her condition, not on residual functional capacity since treating source opinions are never entitled to controlling weight on issues reserved to the Commissioner. See Soc. Sec. R. 96-5p.

Gates points out that the medical record the ALJ found to be inconsistent with Perry's opinion that Gates was so limited was in fact undated and unsigned. That record, apparently submitted in response to an October 17, 2007, request from the Office of Disability Determination Services, states that Gates "has no disabling condition" and that her depression "can be successfully treated with medications." (Docket No. 8-10, p. 3). Gates attributes that opinion to a nurse practicioner in Perry's clinic and not Dr. Perry himself. The Commissioner

7

does not dispute that claim. Gates also takes issue with the ALJ's statement that there were no records from Dr. Perry after September, 2007. There are medical records from Leake Memorial Medical Clinic, with which Dr. Perry was apparently affiliated, after September, 2007, indicating Gates occasionally visited the clinic for a variety of issues, not all related to her claim . (Docket No. 8-12, pp.20-27). However, there is no record signed by Dr. Perry indicating any significant change in Gates's physical condition after September, 2007, until his September, 2009, statement that Gates was so limited as to be essentially disabled, which was addressed by the ALJ. The ALJ recited Gates's testimony that Perry still gives her medication. (Docket No. 8-2, pp. 15-16). The ALJ also noted Gates had been treated at Leake Memorial Medical Clinic twice in 2008 for left knee pain. (Docket No. 8-2, p. 17). Gates points to no additional record by Perry which supports her claim.

"Good cause" to reject a treating physician's opinion as to the nature and severity of impairment exists "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000). A review of Dr. Perry's September, 2009, assessment reveals that it lands squarely in this category. As the Commissioner notes, Dr. Perry sent Gates to several providers and none of their reports, discussed *supra*–the MRI, the neurological examination, the X-ray report, therapy records-- support the restrictions Dr. Perry ultimately imposed in his September, 2009, assessment. The form Dr. Perry completed requested that he state what medical findings supported his conclusions about the amount Gates could lift and carry and the amount of time she could sit, stand and walk. In response to that question, Dr. Perry listed three conditions–osteoarthritis,

fibromyalgia and depression. Dr. Perry provided no further information to support his conclusion. (Docket No. 8-12, p. 92).

Pursuant to 20 C.F.R. §404.1527(d)(2), controlling weight is given to a treating physician's opinion as to the severity of an impairment if "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." That simply cannot be said of Dr. Perry's opinion in this case. The factors cited in the regulation as those to consider when the treating physician's opinion is not given controlling weight, id. at (d)(2)(i)-d(6), most of which the ALJ specifically addressed, mandate affirming the Commissioner's decision. See, e.g., Myers v. Astrue, 2010 WL 6397551 (S.D. Miss. 2010). No medical evidence supports the extreme limitations Dr. Perry ascribed to Gates, even Perry's records do not consistently indicate the level of severity described in his 2009 assessment, and the specialists to whom Dr. Perry referred Gates did not find any condition warranting the level of restriction imposed by Dr. Perry.

Gates's argument that the ALJ had to expound on the reasons for rejecting Dr. Perry's assessment is misplaced. As this Court noted in Myers, the duty to thoroughly analyze rejection of a treating physician's opinion pursuant to 20 C.F.R. 404.1527(d)(2)(i)-(d)(6) is not triggered if there is of record "reliable medical evidence from treating or examining physicians" which controverts that provided by Dr. Perry. Myers, 2010 WL 6397551 at *12. The ALJ relied on the records of the providers to whom Dr. Perry referred Gates in rejecting Perry's contrary opinion.

## V. CONCLUSION

For the above reasons, the undersigned recommends that the Plaintiff's Motion for Summary Judgment be denied, and that the Defendant's Motion to Affirm be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 31st day of August, 2011.


<u>s/F. Keith Ball</u>
UNITED STATES MAGISTRATE JUDGE